UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | : | **MEMORANDUM DECISION AND ORDER** |
| - against - | : | 24-cr-391 (BMC) |
| FRANTZON SAINTILIEN, Defendant. | : | |

**COGAN**, District Judge.

This is a tax fraud prosecution in which the IRS alleges that defendant submitted fraudulent information on his tax returns as well as the tax returns of clients who had retained his co-conspirator to prepare their returns. Defendant has moved [28] to suppress evidence obtained during an interview with two IRS Special Agents. For the reasons that follow, the motion is denied.

## BACKGROUND

The IRS Criminal Investigation division began investigating a tax return preparer ("Tax Preparer-1") suspected of filing fraudulent tax returns on behalf of several clients. The IRS suspected that Tax-Preparer 1 had included false fuel expenses on IRS Form 4136, false losses from the sale of business property on IRS Form 4797, and false Schedule C business expenses on at least some clients' tax returns. An IRS Criminal Investigation report from January 2022 (the "January 2022 report") identified defendant as a co-conspirator. The report also identified defendant as being "the go between with clients and [Tax Preparer-1]."

Also in January 2022, an IRS representative contacted defendant about his personal tax returns. During that conversation, defendant acknowledged that his personal tax returns included some claimed credits that should not have been included.

On September 12, 2022, two IRS Special Agents ("SAs") approached defendant at work and explained that they were conducting an investigation and wanted to ask him some questions. During this interview, defendant (1) told the SAs that Tax Preparer-1 prepared defendant's personal tax returns; (2) identified his personal tax returns for 2017, 2018, 2019, and 2020; (3) acknowledged that his personal tax returns included a credit for fuel that should not have been included on his tax returns for 2016 through 2020; (4) acknowledged that he received some money from his personal tax returns; and (5) described his relationship with Tax Preparer-1.

After defendant provided this information, the SAs read him a statement of rights from the Internal Revenue Manual for Criminal Investigation (the "IRS manual"). The statement of rights, set forth in Document 5661, Statement of Rights (Non-Custody) Revision 3/2001 (hereinafter, "Document 5661") includes in relevant part: "I would like to ask you some questions. However, first I advise you that under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way. . . . I advise you further that you may, if you wish, seek the assistance of any attorney before responding." Document 5661 further instructs SAs to deliver this statement "[a]t the outset of your first official meeting with the subject of an investigation." The IRS manual also includes a section, Section 9.4.5.8.3.1, called "Informing of Constitutional Rights in Non-Custodial Interviews." That regulation provides that an SA "will advise the individual of their constitutional rights during non-custodial interviews when the individual is a subject of an investigation . . . or when a witness' statement would incriminate the witness."

Upon hearing the statement of rights, defendant told the SAs that he would only continue the interview with his attorney present, and the interview concluded. The interview lasted approximately 26 minutes.

Defendant's counsel at the time informed an SA that defendant would need to reschedule his next interview for September 20 because he (the attorney) was not available to attend. On November 15, 2022, the attorney spoke with two SAs and informed them that he would not make defendant available for future interviews.

About two years later, a grand jury returned an eighteen-count indictment against defendant. He was charged with willfully aiding or assisting in the preparation or presentation of false tax returns, in violation of 26 U.S.C. § 7206(2).

## DISCUSSION

### I. Defendant's Motion to Suppress Is Untimely, But There Is Good Cause

The first issue is whether defendant's motion to suppress is timely. The deadline for pretrial motions was October 17, 2025. The instant motion, filed on August 14, 2026, is obviously untimely. However, pursuant to Federal Rule of Criminal Procedure 12(b)(3), the Court may still consider the motion if defendant shows good cause for untimely filing.

Defendant argues that he has good cause because he only learned that he was a "subject" of an IRS investigation when he received the January 2022 report through discovery at the end of June 2026. This matters because the IRS manual instructs SAs to inform an interviewee of his right to counsel "when the individual is a subject of an investigation . . . or when a witness' statement would incriminate the witness." The Government argues that no good cause exists because defendant was in fact not a subject of the investigation at the time of the interview, and the January 2022 report has no import. Rather, there are specific IRS procedures for classifying

someone as a subject of a criminal investigation, and defendant was not classified as a subject until November 2022, two months after the interview in question.

The Government's argument is too convenient. It cannot be the case that IRS agents can interview someone they suspect of wrongdoing but avoid classifying them as a "subject" of an investigation until it suits them. For purposes of the September 2022 interview, defendant was certainly a "subject of an investigation" or "witness" whose statement "would incriminate [him]." The January 2022 report identified him as a "co-conspirator" and "the go between with clients and [Tax-Preparer 1]." The January 2022 report also refers to defendant and Tax-Preparer-1 as "the suspects." This shows that the SAs knew defendant was a subject or a witness whose statements would incriminate himself before they commenced defendant's interview in September 2022. Because defendant was not aware of the January 22 report until June 2026, there is good cause for the untimely motion.

## II. Defendant's Statements Will Not Be Suppressed

"[T]he federal exclusionary rule, which forbids the use of evidence obtained in violation of the Fourth or Fifth Amendments, does not extend to violations of statutes and regulations." United States v. Kontny, 238 F.3d 815, 818 (7th Cir. 2001). When a criminal defendant "seeks judicial enforcement of [an agency's regulation] by means of the exclusionary rule," he must show that one of his "constitutional rights has been violated." United States v. Caceres, 440 U.S. 741, 749 (1979). In other words, "suppression is not an available remedy for violations of agency regulations that fail to raise constitutional questions." United States v. Felipe, 148 F.3d 101, 109 (2d Cir. 1998).

For purposes of this motion, I will assume that the IRS did not follow its own regulations. If defendant was a subject at the time of the September 2022 interview, the SAs were supposed

to read the statement in Document 5661 to defendant before interviewing him, including the statement regarding his right to counsel. They did not do so. If defendant was merely a witness at the time of the interview, the SAs were supposed to read the statement regarding his right to counsel once he made incriminating statements. They did not read him the statement until the end of the interview, and defendant made several incriminating statements during the interview. But because the exclusionary rule only applies to constitutional rights violations, suppression is not an appropriate remedy. See Beckwith v. United States, 425 U.S. 341, 344 (1976) (Miranda warnings are not required for noncustodial interviews of taxpayers by IRS Special Agents); United States v. Leonard, 524 F.2d 1076, 1088 (2d Cir. 1975) (IRS does not have to "give the Miranda warnings to taxpayers not in custody, even in criminal tax fraud investigations" and "IRS has gone beyond its constitutional obligation" in implementing Miranda-like warnings in its regulations).

Defendant urges a different result by relying on the doctrine from United States ex. rel. Accardi v. Shaughnessy, 347 U.S. 260, 267 (1954), which allows courts to invalidate agency action if an agency fails to follow its own regulations or procedures. But that argument is foreclosed by Cacares, in which the Supreme Court unequivocally rejected a criminal defendant's attempt to conflate application of the exclusionary rule with "invalidation of the agency action" under Accardi. Cacares, 440 U.S. at 754.

An evidentiary hearing is unnecessary. A defendant who is moving to suppress evidence is not automatically entitled to an evidentiary hearing. United States v. Barrios, 210 F.3d 355, 2000 WL 419940, at *1 (2d Cir. 2000). Here, neither party contests the facts. The parties agree that defendant was interviewed by and made incriminating statements to the SAs before he was informed of his right to counsel. The parties dispute the legal effect of certain events in the

timeline (*e.g.*, when defendant became a "subject" of the IRS investigation), but the dispositive question before me is a legal one: Can the violation of an agency regulation justify the suppression of evidence under the exclusionary rule in the absence of a constitutional rights violation? The answer is no.

## CONCLUSION

For the foregoing reasons, defendant's motion to suppress [28] is denied.

**SO ORDERED.**

Brian M. Cogan

U.S.D.J.

Dated: Brooklyn, New York
September 8, 2026